## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                  Case No.  06-31265

MARY C. NEVELS
a/k/a MARY C. SUSONG
a/k/a CONNIE N. SUSONG

                    Debtor


          JAMES GIBBS and wife,
          SHARON GIBBS

                    Plaintiffs

            v.                                Adv. Proc. No.  06-3155

          MARY C. NEVELS

                    Defendant


## MEMORANDUM ON PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT


**APPEARANCES**:    STONE & HINDS, P.C.
                 George F. Legg, Esq.
                 Mark E. Brown, Esq.
                 507 Gay Street, S.W.
                 Suite 700
                 Knoxville, Tennessee  37902
                 Attorneys for Plaintiffs

                 GAIL F. WORTLEY, ESQ.
                 3715 Powers Street
                 Knoxville, Tennessee  37917
                 Attorney for Defendant/Debtor


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

On September 18, 2006, the Plaintiffs filed the Complaint of James and Sharon Gibbs Objecting to the Dischargeability of a Debt of Mary C. Nevels (Complaint), asking the court to declare a state court judgment obtained against the Debtor in the amount of $545,006.30 nondischargeable under 11 U.S.C. § 523(a)(2)(A), (4), and/or (6) (2005).  On November 14, 2006, the Defendant/Debtor (Debtor) filed an Answer to Objection to Discharge of Debt (Answer), denying the Plaintiffs' allegations.

Presently before the court is the Motion for Summary Judgment by James and Sharon Gibbs (Motion for Summary Judgment) filed by the Plaintiffs on June 1, 2007.  The Motion for Summary Judgment is accompanied by a Statement of Undisputed Material Facts and memorandum of law as required by E.D. Tenn. LBR 7056-1.  Additionally, the Plaintiffs rely upon the Affidavit of Mark E. Brown and the following exhibits attached thereto:  (1) the Complaint initiating this adversary proceeding; (2) the Debtor's Answer; (3) a Motion to Amend Complaint and Motion for Service by Publication filed by the Plaintiffs on July 3, 2003, in case no. 02-3-112, styled *James Gibbs and wife, Sharon Gibbs v. Rick L. Susong, Back to Basics, Inc., and Mary Constance Nevels*, in the Chancery Court for Sevier County, Tennessee (Sevier County Lawsuit); (4) an Order entered in the Sevier County Lawsuit on September 2, 2003, granting the July 3, 2003 Motion to Amend filed by the Plaintiffs; (5) the Second Amended Complaint filed by the Plaintiffs in the Sevier County Lawsuit on August 14, 2003; (6) a Summons filed by the Plaintiffs in the Sevier County Lawsuit on August 25, 2003, evidencing an attempt to serve the Debtor by certified mail; (7) an Affidavit of Publication filed by the Plaintiffs in the Sevier County Lawsuit on October 16, 2003; (8) an Order entered in the Sevier County Lawsuit on December 4, 2003, granting the Plaintiffs a default

2

judgment against the Debtor; (9) a Motion to Set Aside Default Judgment filed by the Debtor on

January 8, 2004, in the Sevier County Lawsuit; (10) the Plaintiffs' Response to Defendant, Mary

Constance Nevels' Motion to Set Aside Default Judgment filed by the Plaintiffs on February 2, 2004,

in the Sevier County Lawsuit; (11) the Reply to Plaintiffs' Response to Motion to Set Aside Default

Judgment filed by the Debtor on February 5, 2004, in the Sevier County Lawsuit; (12) a

Supplemental Affidavit of Mary Constance Nevels filed in the Sevier County Lawsuit on February 5,

2004; (13) an Order entered in the Sevier County Lawsuit on February 19, 2004, denying the Motion

to Set Aside Default Judgment; (14) a Motion for Judgment filed by the Plaintiffs on August 29,

2005, in the Sevier County Lawsuit; (15) the Report of Special Master filed on February 10, 2006,

in the Sevier County Lawsuit; (16) an Order entered on February 22, 2006, adopting the Report of

the Special Master and awarding the Plaintiffs a judgment against the Debtor in the amount of

$545,006.30 in the Sevier County Lawsuit; (17) the Plaintiffs' Rule 60.02 Motion to Amend Order

Entered on February 22, 2006, [to] Add Taxation of Costs filed by the Plaintiffs on March 31, 2006,

in the Sevier County Lawsuit; (18) an Amended Order entered in the Sevier County Lawsuit on

March 31, 2006, amending the February 22, 2006 Order to include the taxing of costs against the

Debtor (Judgment); and (19) a Memorandum filed on July 22, 2005, by the United States Bankruptcy

Court for the Eastern District of Tennessee, Northern Division, in Adv. No. 04-3100, styled *James

Gibbs and wife, Sharon Gibbs v. Ricky Lynn Susong*, containing findings of fact and conclusions of

law in support of a Judgment entered on the same date granting the Plaintiffs a nondischargeable

judgment against the defendant Ricky Lynn Susong in the amount of $512,837.48 (Memorandum

Opinion).

On June 20, 2007, the Debtor filed her Response to Motion for Summary Judgment (Response) and her Response to Statement of Undisputed Facts.[1]

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(I) (West 2006).

## I

The following material facts have been established by the Statement of Undisputed Material Facts and the Response to Statement of Undisputed Material Facts, and/or they have been ascertained from the documents attached as exhibits to the Affidavit of Mark E. Brown.[2]  On November 2, 1999, the Plaintiffs entered into a contract with Back to Basics, Inc., a company owned by the Debtor and her former husband, Ricky Susong, for the construction of a log home on their property in Sevier County, Tennessee, at a price of $531,442.00.  *See* Ex. 5 at ¶ 3.  The parties orally agreed that the construction would be completed in one year, and in March 2000, the Plaintiffs obtained a construction loan with Waterfield Financial.  *See* STAT. OF UNDISPUTED MAT. FACTS  at ¶ 49; Ex. 5 at ¶ 3.  Back to Basics, Inc. opened a construction account at Sevier County Bank under the name of Back to Basics, Inc. Construction Account for Jim and Sharon Gibbs (Gibbs Construction Account).  *See* Ex. 1 at ¶ 7; Ex. 2 at ¶ 5.

---

[1] The Plaintiffs filed a Supplemental Memorandum of Plaintiffs James and Sharon Gibbs in Support of Motion for Summary Judgment on June 27, 2007; however, this brief was not considered, as it was filed outside the scope of E.D. Tenn. LBR 7056-1.

[2] Because the Debtor did not file an answer in the Sevier County Lawsuit, and a default judgment was entered, all allegations contained in the Second Amended Complaint filed by the Plaintiffs on August 14, 2003, are deemed admitted.  *See* TENN. R. CIV. P. 8.04 ("Averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading . . .[.]").

4

At the request of the Debtor and/or Ricky Susong, on March 13, 2000, the Plaintiffs deposited $153,632.95 into the Gibbs Construction Account, bringing the balance in the account to $158,625.95. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 55; Ex. 1 at ¶ 9; Ex. 2 at ¶ 5. A total of $156,000.00 was withdrawn from the Gibbs Construction Account by the Debtor between March 13, 2000, and May 2, 2000, that was not spent on the Plaintiffs' construction, including $50,000.00 that was paid to McCarter Lumber Company for Back to Basics, Inc.'s outstanding bills. *See* STAT. OF MAT. UNDISPUTED FACTS at ¶ 56.

Only the foundation and the basement walls and floor had been completed as of May 8, 2001, which the Plaintiffs found to be defective, and they demanded that all construction be discontinued. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 61; Ex. 5 at ¶¶ 6, 9. The Plaintiffs then undertook completion of the home, including the purchase of a log package from Tennessee Log Homes for $217,669.00. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 67.

On July 3, 2003, the Plaintiffs filed a motion in the Sevier County Lawsuit to amend the complaint filed against Ricky Susong on March 1, 2002, alleging breach of contract, fraud, and violations of the Tennessee Consumer Protection Act, in order to add the Debtor as a defendant, to be served by publication. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 3; Ex. 3. In support of the motion, the Plaintiffs alleged the following: (1) that on March 17, 2003, they discovered that $50,000.00 from the Gibbs Construction Account was paid via a check that Ricky Susong claimed was written by the Debtor to McCarter Lumber Company in March 2000, and applied to outstanding bills for Back to Basics, Inc.; (2) that the Debtor was president of Back to Basics, Inc., in March

5

2000; and (3) that the Plaintiffs were unable to locate the Debtor after diligent efforts, requiring service of process via publication and mailing to a post office box. *See* EX. 3 at ¶¶ 2-5.

The motion was granted on September 2, 2003, and a Second Amended Complaint was filed in the Sevier County Lawsuit on August 14, 2003. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 6-7; EX. 4; EX. 5. In the Second Amended Complaint, the Plaintiffs sought damages in the amount of $296,866.83, pre-judgment interest, treble damages, attorneys' fees and costs, and punitive damages. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 8; EX. 5. The Second Amended Complaint was sent to the Debtor via certified mail, return receipt requested to the Debtor at P.O. Box 6250, Maryville, Tennessee 37802-6520, on August 13, 2003, and returned with a "Box Closed; Unable to Forward," and the attempted service was filed in the Sevier County Lawsuit on August 23, 2003. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 9-11; EX. 6. The Plaintiffs served the Debtor via publication in *The Daily Times* in Maryville, beginning on September 6, 2003, and ending on September 27, 2003, and an Affidavit of Publication was filed on October 16, 2003. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 12-13; EX. 7.

On December 4, 2003, a default judgment was entered against the Debtor in the Sevier County Lawsuit. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 15-16. On December 12, 2003, the Plaintiffs appeared before the Special Master and offered proof of their damages. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 70; EX. 15.

The Debtor filed a Motion to Set Aside Default Judgment in the Sevier County Lawsuit on January 8, 2004. *See* STAT. OF UNDISPUTED MAT. FACTS at ¶ 17; EX. 9. In support of this motion,

6

the Debtor attached an affidavit stating that she was never personally served with process, that she

had been unaware of the service by publication, that she had only been made aware of the default

judgment because she was in court on another matter that day, that she acted within the scope of her

corporate authority, not individually, in her dealings with the Plaintiffs, and that she never knowingly

used funds from the Gibbs Construction Account for other projects.  *See* STAT. OF UNDISPUTED

MAT. FACTS at ¶¶ 18-19; EX. 9.

The Plaintiffs filed a response to the Debtor's Motion to Set Aside Default Judgment on

February 2, 2004, arguing that her default was willful, that she had failed to state a meritorious

defense, and that they would be unduly prejudiced if her motion were granted, to which the Debtor

then filed a reply brief, a proposed unsigned Answer and Affirmative Defenses of Mary Constance

Nevels, and a supplemental affidavit on February 5, 2004.  *See* STAT. OF UNDISPUTED MAT. FACTS

at ¶¶ 20-21; EX. 10; EX. 11; EX. 12.  The Motion to Set Aside Default Judgment, which was heard

on February 6, 2004, was denied pursuant to an Order entered on February 16, 2004, upon a finding

that the Debtor actively concealed her location from the Plaintiffs to avoid service of process.  *See*

STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 27-28; EX. 13.

The Plaintiffs filed a Motion for Judgment on August 29, 2005, asking the state court to order

the Special Master to file a report and to enter judgment in their favor.  *See* STAT. OF UNDISPUTED

MAT. FACTS at ¶ 29; EX. 14.  On February 10, 2006, the Special Master filed his Report of Special

Master setting forth the facts of the case as presented at the December 12, 2003 hearing, and making

the following findings and recommendations:  (1) that the record established that the

Debtor . . . participated in a series of deceptions and misrepresentations calculated
to hinder and delay and conceal the real progress on the construction of the Plaintiffs'
home . . . [and] the defendants while soliciting payments of substantial sums from the
Plaintiffs actually diverted large portions of the funds to other purposes";

(2) that "under TCA 66-11-137 the diversion of funds constituted a prima facie evidence of intent

to defraud and that the [Debtor] intended to defraud the Plaintiffs," supporting an award of actual

damages of $329,283.66; (3) that although the majority of wrongdoing was committed by Mr.

Susong, an award of punitive damages of $10,000.00 against the Debtor was appropriate; (4) that

the Debtor violated the Tennessee Consumer Protection Act by making "deceptive and misleading

statements," whereby the Plaintiffs were entitled to recovery of their attorneys' fees in the amount

of $43,354.58, but declining to award treble damages because the "real culprit" was Mr. Susong; and

(5) that the court should enter a total judgment in the amount of $382,638.24 against the Debtor.[3]

*See* STAT. OF UNDISPUTED MAT. FACTS at ¶¶ 31-32, 35; EX. 15 at 6-8.

On February 22, 2006, the Chancellor entered an Order in the Sevier County Lawsuit

adopting the Special Master's findings and awarded the Plaintiffs a judgment against the Debtor in

the amount of $545,006.30, representing actual damages of $329,283.66, punitive damages of

$10,000.00, pre-judgment interest of $162,368.06, and attorneys' fees and costs of $43,354.58. *See*

STAT. OF UNDISPUTED MAT. FACTS at ¶ 36; EX. 16. Upon a motion to amend filed by the Plaintiffs

on March 31, 2006, the court entered an Amended Order on the same date identical in all respects

to the February 22, 2006 Order but with an added provision taxing costs to the Debtor. *See* STAT.

---

[3] The Special Master's Report references that Mr. Susong filed for bankruptcy after the hearing before the
Special Master. *See* EX. 15. The record reflects that Mr. Susong filed for Chapter 7 bankruptcy on December 12, 2003,
that the Plaintiffs filed an adversary proceeding objecting to his discharge on May 21, 2004, and that after a four-day
trial, Mr. Susong's discharge was denied, and a judgment against Mr. Susong and in favor of the Plaintiffs was entered
by the Bankruptcy Court in the amount of $512,837.48. *See* EX. 19.

8

OF UNDISPUTED MAT. FACTS at ¶¶ 38, 40; EX. 17; EX. 18.  The Debtor did not file written objections

to the Special Master's Report nor did she file a notice of appeal of the Judgment.  *See* STAT. OF

UNDISPUTED MAT. FACTS at ¶ 71.

The Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on

June 13, 2006, and the Plaintiffs timely filed this adversary proceeding on September 18, 2006.  With

respect to the Motion for Summary Judgment, the Plaintiffs argue that there are no genuine issues

of material fact because the Judgment, which is based upon the unchallenged findings of the Special

Master, is final, and under the doctrines of res judicata and/or collateral estoppel, all issues have been

previously resolved.  The Debtor opposes the Motion for Summary Judgment on the grounds that

she was never properly served with the Sevier County Lawsuit, and therefore, the Judgment is void

and cannot be binding and final against her.

## II

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R.

CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of

Bankruptcy Procedure).  When considering a motion for summary judgment, the court does not

weigh the evidence to determine the truth of the matter asserted, but simply determines whether a

genuine issue for trial exists.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

9

The party seeking summary judgment bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the non-moving party to produce specific facts showing a genuine issue for trial, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986), by citing specific evidence and not merely relying upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

Based upon the facts and record presented, the court finds that there are no genuine issues of material fact, and the Plaintiffs are entitled to judgment as a matter of law.

### III

The Plaintiffs argue that the Judgment in the Sevier County Lawsuit is final and must be honored by the bankruptcy court pursuant to the doctrines of res judicata and/or collateral estoppel, while the Debtor argues that the Judgment is a default judgment, is void, and is not entitled to res judicata and/or collateral estoppel effect. "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from re-

10

litigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (*quoting Federated Dep't Stores, Inc. v. Moitie*, 101 S. Ct. 2424, 2428 (1981)). Res judicata extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (quoting RESTATEMENT (SECOND) JUDGMENTS § 24 (1982)). The Sixth Circuit Court of Appeals has held that res judicata is based upon the following four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Kane*, 71 F.3d at 560 (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)). However, because the federal courts have exclusive jurisdiction over actions to determine nondischargeability under § 523(a)(2), (4), or (6), a state court judgment may not be given res judicata effect. *See Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195-96 (B.A.P. 6th Cir. 2002).

Collateral estoppel, or issue preclusion, derives from the Full Faith and Credit Statute, which provides that "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ." 28 U.S.C.A. § 1738 (2006). Accordingly, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 104 S. Ct. 892, 896 (1984). "Bankruptcy courts' exclusive jurisdiction over dischargeability issues does not alter this rule."

11

*Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995).   If a claim or issue

would be barred under state law, and no exception to § 1738 applies, the judgment is given

preclusive effect.  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 105 S. Ct. 1327, 1335 (1985);

*Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997).

Under Tennessee state law, "collateral estoppel bars relitigation of an issue if it was raised

in an earlier case between the same parties, actually litigated, and necessary to the judgment of the

earlier case." *Bursack*, 65 F.3d 51, 54 (6th Cir. 1995) (citing *Massengill v. Scott*, 738 S.W.2d 629,

632 (Tenn. 1987)).  "[M]aterial facts or questions, which were in issue in a former action, and were

there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and

. . . such facts or questions become res judicata and may not again be litigated in a subsequent action

between the same parties."  *Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963) (quoting

*Cantrell v. Burnett & Henderson Co.*, 216 S.W.2d 307, 309 (Tenn. 1948)).

Application of collateral estoppel requires a demonstration that "1) the judgment in the prior

case was final and concluded the rights of the party against whom the defense is asserted, and 2) both

cases involve the same parties, the same cause of action, or identical issues."  *Richardson v. Tenn.

Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995).

> In order to invoke the doctrine successfully, the party must demonstrate (1) that the
> issue sought to be precluded is identical to the issue decided in the earlier suit; (2)
> that the issue sought to be precluded was actually litigated and decided on its merits
> in the earlier suit; (3) that the judgment in the earlier suit has become final; (4) that
> the party against whom collateral estoppel is asserted was a party or is in privity with
> a party to the earlier suit; and (5) that the party against whom collateral estoppel is
> asserted had a full and fair opportunity in the earlier suit to litigate the issue now
> sought to be precluded.

*Am. Indus. Servs., Inc. v. Howard*, No. M2003-01656-COA-R3-CV, 2000 Tenn. App. LEXIS 261,

at *14, 2006 WL 1082833, at *5 (Tenn. Ct. App. Apr. 25, 2006) (citing *Trinity Indus., Inc. v.*

*McKinnon Bridge Co.*, 147 S.W.3d 225, 232-33 (Tenn. Ct. App. 2003)).

Of these requirements, there is no dispute that the Judgment issued on March 31, 2006, was

not appealed by the Debtor and is, therefore, a final judgment. *See* STMT. OF UNDISPUTED MAT.

FACTS, at ¶¶ 36, 40, 71; EX. 1, at ¶ 26; EX. 2, at ¶ 18. There is also no dispute that the parties are the

same. *See generally* EX. 1, EX. 2; EX. 15; EX. 18. Accordingly, the court must determine if the

remaining requirements have been satisfied.

## A

In order to make a determination as to the applicability of collateral estoppel, the court must

first analyze the issues pled in this adversary proceeding in comparison with those pled in the Sevier

County Lawsuit.

As previously discussed, the Sevier County Lawsuit is based upon the breach of contract

between the parties for the construction of the Plaintiffs' home, in which the Plaintiffs argued that

the Debtor and Ricky Susong engaged in fraud, deceptive practices in violation of the Tennessee

Consumer Protection Act, and misappropriation of funds. In this adversary proceeding, citing the

same factual basis as in the Sevier County Lawsuit, the Plaintiffs seek a determination that the

Judgment is nondischargeable under 11 U.S.C. § 523, which, as is alleged in this adversary

proceeding, provides as follows:

13

(a)  A discharge under section 727[4] . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A)  false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

. . . .

(6)  for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523 (2005).[5]

**1**

To satisfy § 523(a)(2)(A), the Plaintiffs must prove that the Debtor obtained money, property, or services through material misrepresentations that she knew were false or that she made with gross recklessness, that the Debtor intended to deceive the Plaintiffs, that the Plaintiffs justifiably relied

---

[4] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C. § 727(b) (2005). This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt,* 54 S.Ct. 695, 699 (1934))). The Order granting the Debtor's discharge was entered on September 25, 2006.

[5] Because § 523(a) is construed strictly against the moving party and liberally in favor of the non-moving party, the Plaintiffs bear the burden of proving each elements necessary for a determination of nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

on the Debtor's false representations, and their reliance was the proximate cause of their losses. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (citing *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998)).

First, the record must evidence that the Debtor engaged in "somewhat blameworthy" conduct, although her intent may be "inferred as a matter of fact" based on the totality of the circumstances. *Copeland*, 291 B.R. at 759 (citing *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)).  Material misrepresentations, omissions, and actual fraud all fall within the scope of § 523(a)(2)(A).  *Copeland*, 291 B.R. at 759; *see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("Actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions.").

Intent to deceive requires proof that the Debtor made false representations that she knew or should have known would convince the Plaintiffs to provide property or services.  *Copeland*, 291 B.R. at 765-66.  "'Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test.'" *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)).  Fraudulent intent may be inferred by examining the Debtor's conduct to determine if she presented the Plaintiff with "'a picture of deceptive conduct . . . indicat[ing] an intent to deceive.'" *Copeland*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)).

Finally, the Plaintiffs must prove that they actually relied upon the Debtor's representations and that, based upon the facts and circumstances known to them at the time, such reliance was

15

justifiable. *Copeland*, 291 B.R. at 767. Justifiable reliance can be found even if the Plaintiffs "'might have ascertained the falsity of the representation had [it] made an investigation.'" *Copeland*, 291 B.R. at 767 (quoting *McCoy*, 269 B.R. at 198).

The Report of Special Master, which was adopted by the Chancellor in the Judgment, expressly states that "[t]he individual Defendant as well as the corporation through the individual defendants participated in a series of deceptions and misrepresentations calculated to hinder and delay and conceal the real progress on the construction of the Plaintiffs' home" and that "under TCA 66-11-137 the diversion of the [$50,000.00] funds constituted a prima facie evidence of intent to defraud[.]" Ex. 15, at 6-7.

**2**

The Plaintiffs also assert that the Judgment is nondischargeable under § 523(a)(4), which applies to debts obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity. For the purposes of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). Larceny under § 523(a)(4) is proved if the debtor wrongfully and with fraudulent intent takes property from its rightful owner, *see Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991)), and differs from embezzlement because the embezzler's initial acquisition of the property at issue is lawful. *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 632 (Bankr. N.D. Ohio

2001).  Defalcation under § 523(a)(4) requires proof of:  "1) a fiduciary relationship; 2) breach of

that fiduciary relationship; and 3) a resulting loss."  *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d

176, 178 (6th Cir. 1997).  In order to prove a fiduciary relationship, "the debtor must hold funds in

trust for a third party[, so] . . . the defalcation provision of § 523(a)(4) is limited to only those

situations involving an express or technical trust relationship arising from placement of a specific

res in the hands of the debtor." *Garver*, 116 F.3d at 179-80.

Here, there was a trust account, namely the Gibbs Construction Account, into which the

Plaintiffs deposited $158,625.95 for use only on their construction.  The record reflects, however,

that those funds were not used for their construction but were, instead, used by the Debtor to pay

outstanding invoices of Back to Basics, Inc., unrelated to the Plaintiffs' construction.  The Special

Master found that this diversion of funds constituted prima facie evidence of an intent to defraud,

citing Tennessee Code Annotated section 66-11-137 (2004), which in turn ties into section

66-11-140, stating that "use of [said] proceeds . . . for any purpose other than either payment

pursuant to written agreement between the parties or in accordance with the allocation of costs and

profits under generally accepted accounting principles for construction projects shall be prima facie

evidence of intent to defraud."  TENN. CODE ANN. § 66-11-140 (2004).

**3**

Finally, the Plaintiffs aver the applicability of § 523(a)(6) for a "willful and malicious" injury.

In order to be successful under this subsection, they must prove, by a preponderance of the evidence,

the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads

17

to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998); *Grogan v. Garner*, 111 S. Ct. 645, 661 (1991) (burden of proof as to nondischargeability actions).  In other words, the Debtor must have either desired to cause the consequences of her actions, or she believed with reasonable certainty that such consequences would occur.  *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999); *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002).  In the Sixth Circuit, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)."  *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted).

"An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur."  *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).  Under Tennessee law, conversion is an intentional tort and requires proof that a party appropriated another's property for his own use, by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property.  *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

As stated previously, the Debtor and Ricky Susong used funds belonging to the Plaintiffs, which were to be used solely for the construction of their home, to pay outstanding invoices owed by Back to Basics, Inc.  Clearly, the improper use of those funds is a conversion under Tennessee law, and thus, falls within the scope of § 523(a)(6).

18

Based upon the foregoing analysis, the court finds that the mutuality requirements for applying collateral estoppel are met.  The parties and issues in this adversary proceeding are exactly the same as those in the Sevier County Lawsuit.  In both actions, the Plaintiffs, relying upon precisely the same facts, argued that the Debtor, along with Ricky Susong, fraudulently misrepresented the status of the construction on their log home and misappropriated funds from the Gibbs Construction Account for their own use by spending the Plaintiffs' construction funds to pay outstanding invoices owed by Back to Basics, Inc.

## B

Next, the court must determine if these issues were actually litigated, were decided on their merits, and whether the Debtor had a full and fair opportunity to litigate them.  There is no dispute that the Judgment is a default judgment entered against the Debtor who did not file an answer in the Sevier County Lawsuit.  *See* STMT. OF UNDISPUTED MAT. FACTS, at ¶¶ 15, 36, 40, 70, 71. Nevertheless, under Tennessee law, it matters not since "[e]ven a default judgment satisfies Tennessee's 'actually litigated' requirement." *Bursack*, 65 F.3d at 54.  Furthermore, the Sixth Circuit has held that nothing in the Bankruptcy Code or its legislative history "reveal[s] anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dischargeability proceedings in bankruptcy court." *Calvert*, 105 F.3d at 320-21.

The Plaintiffs presented evidence to the Special Master at the December 12, 2003 hearing, after which he made recommendations to the court.  The Judgment was then entered in the Sevier

19

County Lawsuit on March 31, 2006, adopting the Special Master's findings.  The Debtor did not appeal the Judgment.  Additionally, although she did not file an answer or otherwise appear to defend the Sevier County Lawsuit, the Debtor did file a motion to set it aside, arguing that the Judgment was void because she was not properly served with process.  After a hearing, the court determined that her arguments had no merit, that the Plaintiffs' counsel exercised due diligence in attempting to ascertain her whereabouts for personal service, that she willfully concealed her whereabouts, and that service by publication was proper.  *See* Ex. 13.

In a recent case with similar facts, the Tennessee Court of Appeals affirmed the dismissal of a lawsuit filed by the plaintiffs based upon the collateral estoppel effect of a default judgment entered by the General Sessions Court for Marion County, Tennessee.  *See Morrison v. Citizen State Bank*, No. M2004-00263-COA-R3-CV, 2005 Tenn. App. LEXIS 597, 2005 WL 2295552 (Tenn. Ct. App. Sept. 20, 2005).  In *Morrison*, the bank originally filed a civil warrant against the Morrisons for a deficiency judgment on six loans and to recover a vehicle, alleging that the loans were cross-collateralized, and default on one rendered them all in default.  *Morrison*, 2005 Tenn. App. LEXIS 597,  at *2-3, 2005 WL 2295552, at *1.  The Morrisons did not respond or appear for the hearing, and a default judgment was entered against them.  *Morrison*, 2005 Tenn. App. LEXIS 597,  at *4, 2005 WL 2295552, at *1.  Following dismissal of an untimely appeal, the Morrisons filed an action alleging that the bank defrauded them and/or allowed someone to forge their signatures on four of the six notes and argued that the loans were not cross-collateralized.  *Morrison*, 2005 Tenn. App. LEXIS 597,  at *4-5, 2005 WL 2295552, at *1-2.  The civil action was dismissed on summary

judgment in favor of the bank on the basis of res judicata, and the Morrisons appealed. *Morrison*, 2005 Tenn. App. LEXIS 597, at *6, 2005 WL 2295552, at *2.

The court of appeals found that, notwithstanding the Morrisons' failure to defend the general sessions warrant, the issues of cross-collateralization and the validity of all six notes were decided when the general sessions court rendered a judgment in favor of the bank. *Morrison*, 2005 Tenn. App. LEXIS 597, at *10-11, 2005 WL 2295552, at *3. Holding that the Morrisons could have raised the cross-collateralization and forgery issues in defense of the civil warrant, the court of appeals determined that the Morrisons were now estopped from raising the issues in a separate suit, because the default judgment was "conclusive 'to all matters which might have legally been put in issue and determined . . . .'" *Morrison*, 2005 Tenn. App. LEXIS 597, at *13, 2005 WL 2295552, at *4 (quoting *Nat'l Cordova Corp. v. City of Memphis*, 380 S.W. 793 (Tenn. 1964)).[6]

As confirmed by the foregoing authority, the issues of fraud, misappropriation, and sufficiency of service of process were fully litigated, and therefore, collateral estoppel applies not only to the Judgment, but also with respect to whether or not the Debtor was properly served in the Sevier County Lawsuit.[7]

---

[6] As in this case, the Morrisons argued on appeal that they were not properly served with notice, to which the court of appeals stated "[t]his may be so, and if true, would have been grounds for appealing the default judgment[, but h]e failed to timely file his appeal, however, and thus the issue of proper service has also been conclusively determined against him." *Morrison*, 2005 Tenn. App. LEXIS 597, at *13 n.6, 2005 WL 2295552, at *4 n.6.

[7] Moreover, pursuant to the *Rooker-Feldman* doctrine, lower federal courts may not sit in review of state court judgments, *see Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195 (B.A.P. 6th Cir. 2002), and precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). In short, as recently stated by the Sixth Circuit,

the federal district courts lack jurisdiction over two types of cases originating in state court: (1) cases

(continued...)

IV

Because the Judgment is final and meets all of the other requirements necessary for the application of collateral estoppel, the Debtor may not re-litigate the issues raised by the Plaintiffs in this adversary proceeding since they have already been decided in the Sevier County Lawsuit. Accordingly, the court finds that the Plaintiffs have met their burden of proof with respect to a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A), (4), and (6), and the Judgment entered by the Chancery Court for Sevier County, Tennessee, on March 31, 2006, in favor of the Plaintiffs and against the Debtor in the amount of $545,006.30, is nondischargeable.

An order consistent with this Memorandum will be entered.

FILED:  July 9, 2007

BY THE COURT

/s/  RICHARD STAIR, JR.

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

---

[7](...continued)
where appellate remedies have been exhausted in state court and issues raised and decided in the state courts are presented to the federal district courts for reconsideration; and (2) cases where the federal claims asserted turn so directly on state court judgments that the federal district courts must review the state court judgments to resolve the federal claims.

*Johnson v. Ohio Sup. Ct.*, 156 Fed. Appx. 779, 782, 2005 U.S. App. LEXIS 25306, at *11, 2005 WL 3113513, at *4 (6th Cir. Nov. 18, 2005).  The Debtor's argument concerning service of process falls squarely into the second category and is thus prohibited.